IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-02085-CMA-MJW

RANDAL ANKENEY,

Plaintiff,

v.

STEVE HARTLEY,
TIM CREANY,
KLENKE, Nurse Practitioner N.P.,
HIBBS, Nurse Practitioner N.P.,
ANTHONY A. DeCESARO, and
GRIEVANCE OFFICER JOHN DOE,

Defendants.

---

**RECOMMENDATIONS ON
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT (Docket No. 26)
and
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (Docket No. 4)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before the undersigned pursuant to an Order Referring Case issued

by District Judge Christine M. Arguello on November 12, 2009.  (Docket No. 15).

**PLAINTIFF'S ALLEGATIONS**

The pro se incarcerated plaintiff, Randal Ankeney, alleges the following in his

Amended Prisoner Complaint brought pursuant to 42 U.S.C. § 1983.  (Docket No. 10).

He injured his left knee when he was incarcerated in the Colorado Department of

Corrections ("CDOC") in 2003 or 2004.  The CDOC denied care for the injury at that

time, and he was told he did not need surgery or other treatment.  In 2008, he was re-

incarcerated, and at admission, he complained to staff of increasing and chronic knee pain from the earlier injury. He subsequently re-injured or aggravated the existing injury by slipping on standing water in a cell with a leaking toilet. He repeatedly notified the CDOC of chronic pain that interfered with normal functions, made it difficult to sleep, and limited his mobility. When he asked about whether he should exercise, he was told by medical staff that he should continue to exercise and that there was nothing seriously wrong with his knee.

Plaintiff has never had his knee examined by a knee specialist or by an orthopedic surgeon since his arrival at the correctional facility, nor has an MRI been performed. He was told by an unspecified person that the denial of an examination by a surgeon or other specialist and denial of an MRI were due to budgetary and insurance reasons.

Plaintiff is now in constant pain from his knee injury. He walks with a noticeable limp and usually has noticeable swelling in his left knee. He is unable to perform routine movements and actions and is often unable to sleep due to the pain and constant discomfort.

Defendants were deliberately indifferent to his serious medical need. He seeks a temporary and/or permanent injunction ordering defendants to perform an MRI on his left knee, have a knee surgeon or other specialist inspect and examine him and his medical records, and perform any and all treatment recommended by the surgeon, including any surgery and rehabilitation. In addition, plaintiff seeks compensatory damages for the damage to his knee, pain, and future medical care. He also requests punitive damages.

**PENDING MOTIONS**

Two motions are now before the court for report and recommendation.

Defendants have filed a Motion to Dismiss Plaintiff's Complaint (Doc. # 10) (Docket No.

26), to which plaintiff filed a response (Docket No. 30), and defendants filed a reply

(Docket No. 32).  Plaintiff has filed a Motion for Preliminary Injunction (Docket No. 4), to

which defendants filed a response (Docket No. 22), and plaintiff filed a reply (Docket

No. 24).  The court has considered these motion papers as well as applicable Federal

Rules of Civil Procedure and case law.  In addition, the court has taken judicial notice of

the court file.  The court now being fully informed makes the following findings,

conclusions, and recommendations.

Defendants seek dismissal of the Amended Prisoner Complaint (Docket No. 10)

pursuant to Fed. R. Civ. P. 12(b)(1) and (6) on the following grounds:  (1) defendants, in

their official capacities, are entitled to Eleventh Amendment Immunity, (2) plaintiff has

failed to state a cognizable Eighth Amendment claim upon which relief can be granted,

(3) plaintiff has failed to allege facts showing personal participation in alleged

constitutional violations by defendants Hartley and DeCesaro, (4) defendants are

entitled to qualified immunity in their individual capacities, and (5) plaintiff's request for

injunctive relief should be denied as there is not right to such relief.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must

accept all well-pled factual allegations in the complaint as true and resolve all

reasonable inferences in the plaintiff's favor.  Morse v. Regents of the Univ. of Colo.,

154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th

Cir. 1996).  A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint

fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016, *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 550 U.S. at 545 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

Since the plaintiff is proceeding without counsel, his pleadings have been construed liberally and held to a less stringent standard than formal documents drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor

syntax and sentence construction, or his unfamiliarity with pleading requirements. . . .

At the same time, . . . it is [not] the proper function of the district court to assume the

role of advocate for the pro se litigant." Id.

### **Official Capacity Claims**

Defendants, who are employed by the CDOC, assert that they are immune under

the Eleventh Amendment from claims against them in their official capacities for

monetary and declaratory relief.  In addition, they contend that a section 1983 action

may be brought only against a "person" and that only a claim brought against an official

in his individual capacity is brought against a "person."  Therefore, they contend that all

claims for damages made against them in their official capacities should be dismissed.

This court agrees.  See White v. State of Colo., 82 F.3d 364, 366 (10th Cir. 1996).

An assertion of Eleventh Amendment immunity concerns the subject matter

jurisdiction of the court.  Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002).  It is

well established that "neither a State nor its officials acting in their official capacities are

'persons' under § 1983," Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989),

and that "the Eleventh Amendment precludes a federal court from assessing damages

against state officials sued in their official capacities because such suits are in essence

suits against the state." Hunt v. Bennett, 17 F.3d 1263, 1267 (10th Cir. 1994).

Accordingly, plaintiff's official capacity claims for damages should be dismissed with

prejudice.

### **Eighth Amendment Claim**

Defendants next assert that the plaintiff has failed to state a cognizable Eighth

Amendment claim upon which relief can be granted.  More specifically, they contend
that plaintiff has failed to allege sufficiently the existence of a serous medical need and
that his Complaint states nothing more than a disagreement with medical providers.

    "Medical malpractice does not become a constitutional violation merely because
the victim is a prisoner."  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).  A complaint that
a defendant "has been negligent in diagnosing or treating a medical condition does not
state a valid claim of medical mistreatment under the Eighth Amendment."  <u>Id.</u> at 105-
06.  "Rather, 'a prisoner must allege acts or omissions sufficiently harmful to evidence
deliberate indifference to serious medical needs.'"  <u>Self v. Crum</u>, 439 F.3d 1227, 1230
(10th Cir.) (quoting <u>Estelle</u>, 429 U.S. at 106), <u>cert. denied</u>, 549 U.S. 856 (2006).  "A
prison official's deliberate indifference to an inmate's serious medical needs is a
violation of the Eighth Amendment's prohibition against cruel and unusual punishment. .
. .  The test for constitutional liability of prison officials 'involves both an objective and a
subjective component.'"  <u>Mata v. Saiz</u>, 427 F.3d 745, 751 (10th Cir. 2005).  As the Tenth
Circuit has explained:

> to properly set forth an Eighth Amendment claim on which relief may be
> granted, [the prisoner] must set forth facts demonstrating [1] that his
> alleged medical need . . . was sufficiently serious to meet the objective
> element of the deliberate indifference test, *and* [2] that the Defendants'
> delay in meeting that need caused him substantial harm.  Finally, to meet
> the subjective element of the deliberate indifference test, [the prisoner]
> must allege facts supporting an inference [3] that Defendants knew about
> and disregarded a substantial risk of harm to his health or safety.

<u>Oxendine v. Kaplan</u>, 241 F.3d 1272, 1276-77 (10th Cir. 2001) (quotations omitted).

    "A medical need is serious if it has been diagnosed by a doctor or is one that is
so obvious that even a lay person would easily recognize the necessity for a doctor's

attention." Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996) (citation omitted).
This court will assume, without deciding, that plaintiff's purported knee condition is
sufficiently serious to satisfy the objective inquiry.

However, reading plaintiff's pleadings liberally, accepting all factual allegations in
the pleading as true, and resolving all reasonable inferences in the plaintiff's favor, this
court finds that plaintiff has not alleged any facts indicating that defendants Dr. Creany,
Nurse Practitioner Klenke, and Nurse Practitioner Hibbs were deliberately indifferent to
his injury insofar as plaintiff's claims that they did not order an MRI or other diagnostic
exams and did not refer plaintiff to a specialist.  Plaintiff's pleading states that all three
personally examined him and personally reviewed his medical file.  A medical difference
of opinion is not actionable under the Eighth Amendment.  Fitzgerald v. Corrections
Corp. of Am., 403 F.3d 1134, 1142 (10th Cir. 2005).  Defendants' refusal to provide a
particular course of treatment preferred by the plaintiff does not constitute deliberate
indifference.  See Perkins v. Kansas Dep't of Corr., 165 F.3d 803, 811 (10th Cir. 1999)
("a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment
does not state a constitutional violation").  In addition, a prisoner's contention that he
was denied treatment by a specialist is generally insufficient to establish a constitutional
violation.  Duffield v. Jackson, 545 F.3d 1234, 1239 (10th Cir. 2008) ("The decision that a
patient's condition requires a specialist is a decision about the patient's course of
treatment, and 'negligent diagnosis or treatment of a medical condition do[es] not
constitute a medical wrong under the Eighth Amendment."); Self v. Crum, 439 F.3d at
1232 ("[T]he subjective component is not satisfied, absent an extraordinary degree of
neglect, where a doctor merely exercises his considered medical judgment.  Matters

that traditionally fall within the scope of medical judgment are such decisions as to whether to consult a specialist or undertake additional medical testing."); Ledoux v. Davies, 961 F.2d 1536, 1537 (10th Cir. 1992). Also, a medical providers' considered decision not to order an MRI, or like measures, does not violate a prisoner's constitutional rights. See Estelle v. Gamble, 429 U.S. at 107 (1976) ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice and as such the proper forum is the state court."). This court finds that the plaintiff's pleading does not support an inference that "even a lay person would easily recognize the necessity for a [specialist's] attention," Oxendine v. Kaplan, 241 F.3d at 1278 (quotation omitted), in which case the failure to refer the patient could be actionable. "[T]here is no indication that [plaintiff's] condition obviously required unusual medical skill or ability, or that the prison medical personnel were incapable of attempting to treat [him] in the first instance." Franklin v. Kansas Dep't of Corrections, 2005 WL 3515716, *3 (10th Cir. Dec. 23, 2005). Under the facts plead by plaintiff, this court finds that the failure to refer him to a specialist and to order additional testing does not state a claim of deliberate indifference to his health or medical safety.

The court further finds, however, that at this very early stage in the litigation, plaintiff has adequately stated an Eighth Amendment claim against these three defendants which withstands their motion to dismiss with respect to plaintiff's claim that his condition continued and worsened, yet these three defendants eventually refused to even see or examine him.

**Lack of Personal Participation**

Defendants next assert that plaintiff's claims against defendants Hartley and

DeCesaro must be dismissed for failure to allege facts showing their personal

participation in the alleged constitutional violations.  This court agrees.

"Individual liability under § 1983 must be based on personal involvement in the

alleged constitutional violation."  Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997).

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that

each government-official defendant, through the official's own individual actions, has

violated the Constitution."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009).  As the Tenth

Circuit has stated:

> Under § 1983, government officials are not vicariously liable for the
> misconduct of their subordinates.  "[T]here is no concept of strict
> supervisor liability under § 1983." . . .  "This does not mean that a
> supervisor may not be liable for injuries caused by the conduct of one of
> his subordinates.  It does mean that his liability is not vicarious, that is,
> without fault on his part." . . . .
>
> Supervisors are only liable under § 1983 for their own culpable
> involvement in the violation of a person's constitutional rights.  To
> establish supervisor liability under § 1983, "it is not enough for a plaintiff
> merely to show a defendant was in charge of other state actors who
> actually committed the violation.  Instead, . . . the plaintiff must establish 'a
> deliberate, intentional act by the supervisor to violate constitutional rights.'"
> . . .  In short, the supervisor must be personally "involved in the
> constitutional violation," and a "sufficient causal connection" must exist
> between the supervisor and the constitutional violation." . . . .
>
> In order to establish a § 1983 claim against a supervisor for the
> unconstitutional acts of his subordinates, a plaintiff must first show the
> supervisor's subordinates violated the constitution.  Then, a plaintiff must
> show an "affirmative link" between the supervisor and the violation,
> namely the active participation or acquiescence of the supervisor in the
> constitutional violation by the subordinates. . . .  In this context, the
> supervisor's state of mind is a critical bridge between the conduct of a
> subordinate and his own behavior.  Because "mere negligence" is not

enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur. . . .

Serna v. Colorado Dep't of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006) (citations omitted). Reading the Prisoner Complaint in the light most favorable to the plaintiff, this court finds that the plaintiff has not alleged the requisite affirmative link between the conduct of Warden Hartley and Grievance Officer DeCesarro and the alleged constitutional violations by medical personnel.

Allegations that plaintiff sent Warden Hartley correspondence are not sufficient to establish personal participation in a constitutional violation. "To hold a supervisory prison official liable on the basis of communications he received, 'would be to hold any well informed [prison official] personally liable for damages flowing from any constitutional violation occurring at any jail within that [official's] jurisdiction. We believe that such a broad theory of liability is inconsistent with the personal responsibility requirement for . . . a section 1983 action.'" Walker v. Meyer, 2009 WL 961490, *4 (D. Colo. Apr. 7, 2009) (quoting Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982)). Furthermore, plaintiff's allegations that Hartley failed to supervise the medical personnel properly is also facially inadequate. See Arocho v. Nafziger, 2010 WL 681679, *10 (10th Cir. Mar. 1, 2010). See also Ashcroft v. Iqbal, 129 S. Ct. at 1949.

With regard to Grievance Officer DeCesarro, "[t]he courts require direct, personal participation in the alleged constitutional violations, and DeCesaro's only alleged involvement here were actions he took as the step 3 grievance officer. . . In the Tenth Circuit, constitutional allegations against an actor whose only involvement was during the grievance process do not state a claim." Thomas v.

Ortiz, 2007 WL 3256708, *3 & 4 (D. Colo. Nov. 1, 2007) (inmate failed to state a

claim of deliberate indifference against grievance officer DeCesarro).  See Walker

v. Meyer, 2009 WL 961490, *4 (D. Colo. Apr. 7, 2009) ("[M]ere participation in the

grievance process is an insufficient basis for asserting a violation of constitutional rights.

. . .  The 'mere involvement of processing a grievance at an administrative level does

not establish the affirmative link required to establish supervisor liability for an

employee's conduct.'") (quoting Boles v. Dansdill, 2007 WL 2770473 , *4 (D. Colo. Sept.

20, 2007)).

Here, plaintiff's physical complaints were not the type of "unusual case" in

which it would be obvious to a layperson such as DeCesaro that inadequate

medical care was being provided.  Id. at *3 (citing, e.g., Bond v. Aguinaldo, 228 F.

Supp.2d 918, 920-21 (N.D. Ill. 2002) ("Because deliberate indifference requires

actual knowledge of a serious risk of harm, [Plaintiff] may not sue nonmedical

personnel who denied his grievances.  Except in the unusual case where it would

be evident to a layperson that a prisoner is receiving inadequate or inappropriate

treatment, prison officials may reasonably rely on the judgment of medical

professionals).  In addition, "because the state prison grievance procedure does

not create any constitutional rights, DeCesaro cannot be held liable under a

constitutional deliberate indifference theory for being a decision-maker in the

grievance process."  Id. at *4.  "Finally, . . . a step 3 grievance officer cannot be

held liable in a Section 1983 case, because Plaintiff cannot allege that DeCesaro

in any way directly caused or participated in the failure to provide constitutionally

required medical care."  Id.  For the same reasons, it is recommended that

plaintiff's claims against defendant grievance officer John Doe be dismissed *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

This court thus finds that the Amended Prisoner Complaint lacks allegations sufficient to establish supervisory liability or personal participation by Hartley, DeCesaro, and John Doe under controlling law. Therefore, it is recommended that the claims against them be dismissed with prejudice.

**Qualified Immunity**

Defendants next assert that they are entitled to qualified immunity in their individual capacities. If the above recommendations are accepted, the only claim remaining would be an Eighth Amendment claim against defendants Creany, Klenke, and Hibbs based upon their alleged refusal to examine or even see plaintiff when his purported knee condition allegedly continued and worsened. This court does not recommend dismissal of such claim based upon qualified immunity at this time.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009). It "balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004).

"Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." Id. When a defendant raises a qualified immunity defense, the plaintiff "bears the burden of showing that: (1) the defendants' actions violated a constitutional or statutory right; and (2) the right was clearly established and reasonable persons in the defendants' position would have known their conduct violated that right." Cruz v. City of Laramie, Wyo., 239 F.3d 1183, 1187 (10th Cir. 2001). The Supreme Court has held that the federal courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 129 S. Ct. at 815-16.

"Requiring the law to be clearly established provides defendants with 'fair warning' that their conduct is unconstitutional." Mimics, Inc. v. Village of Angel Fire, 394 F.3d 836, 841 (10th Cir. 2005). "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." Id. (quotations omitted). To be clearly established:

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citation omitted). "Thus, qualified

immunity leaves ample room for mistaken judgments, . . . and protects all but the plainly incompetent or those who knowingly violate the law." Harman v. Pollock, 586 F.3d 1254, 1261 (10th Cir. 2009) (quotations omitted).

Here, an Eighth Amendment claim regarding deliberate indifference to an inmate's serious medical needs was clearly established. Therefore, it is recommended that this one claim not be dismissed on qualified immunity grounds at this time.

**Injunctive Relief**

Finally, defendants assert that plaintiff's request for injunctive relief should be denied as there is no right to such relief. In his pleading, plaintiff seeks a temporary and/or permanent injunction ordering defendants to perform an MRI on his left knee, have a knee surgeon or other specialist inspect and examine him and his medical records, and perform any and all treatment recommended by the surgeon, including any surgery and rehabilitation. Separately, plaintiff moves for such injunctive relief and also asks the court to issue a temporary injunction preventing defendants or anyone under their authority from harassing him or from moving him to another facility without the court's approval. (Docket No. 4).

A preliminary injunction is extraordinary relief. Statera, Inc. v. Hendrickson, 2009 WL 2169235, *1 (D. Colo. July 17, 2009). Injunctive relief should be granted only when the moving party clearly and unequivocally demonstrates its necessity. See Schrier v. University of Colo., 427 F.3d 1253, 1258 (10th Cir. 2005). In the Tenth Circuit, the party requesting injunctive relief must establish that: (1) the party will suffer imminent and irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the

injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits.  Id.  Furthermore, "[b]ecause the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, . . . [the Tenth Circuit has] identified the following three types of specifically disfavored preliminary injunctions . . . (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that [he] could recover at the conclusion of a full trial on the merits."  Id. at 1258-59 (citation and quotations omitted).  Plaintiff here is seeking such a disfavored injunction.

This court also "considers well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. . . .   Courts should grant injunctive relief involving the management of prisons . . . only under exceptional and compelling circumstances."  Walker v. Meyer, 2009 WL 1965493, *4 (D. Colo. July 8, 2009) (citations omitted).

It is well established that "[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered."  Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256, 1260 (10th Cir. 2004) (citations omitted).  "To constitute irreparable harm, an injury must be certain, great, actual, 'and not theoretical.'"  Heideman v. South Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2003).  The moving party "must show that 'the injury complained of is of such imminence that there is a clear and present need for equitable relief' to prevent

irreparable harm." <u>Id.</u> (citation omitted).

Furthermore, the Tenth Circuit has "held that prison officials may not retaliate against or harass an inmate in retaliation for the inmate's exercise of his constitutional rights. . . . 'This principle applies even where the action taken in retaliation would be otherwise permissible.' . . . To prevail, [however,] a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." <u>Baughman v. Saffle</u>, 24 Fed.Appx. 845, 2001 WL 1241329, *2 (10th Cir. Oct. 17, 2001) (citing <u>Peterson v. Shanks</u>, 149 F.3d 1140, 1144 (10th Cir. 1998); <u>Smith v. Maschner</u>, 899 F.2d 940, 947 (10th Cir. 1990)).

Here, this court finds that the plaintiff has failed to meet the heavy burden required to obtain the injunctive relief requested. He has not demonstrated a present threat of irreparable harm. At most, plaintiff offers little more than speculation that his medical condition is growing worse and that he will be retaliated against for commencing this action. He has made no showing that such harm is "certain, great, actual, and not theoretical." The possibility of future retaliation and harassment and further harm to his knee is simply too speculative to justify granting plaintiff's request for injunctive relief. <u>See</u> <u>Sims v. New</u>, 2008 WL 5044554, *2 (D. Colo. Sept. 2, 2008) (inmate's speculation that he *may* suffer acts of retaliation, including a transfer, without more, does not establish irreparable harm for purposes of imposing injunctive relief). "[A] plaintiff satisfies the irreparable harm requirement by demonstrating 'a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages. . . . **Purely speculative harm will not suffice** . . . .'" <u>RoDa Drilling Co v. Siegal</u>, 552 F.3d 1203, 1210 (10th Cir. 2009) (emphasis added). <u>See</u> <u>Greater</u>

<u>Yellowstone Coal. v. Flowers</u>, 321 F.3d 1250, 1258 (10th Cir. 2003) (agreeing with the proposition that "purely speculative harm does not amount to irreparable injury" and holding "that a plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative"); <u>Maximus, Inc. v. Thompson</u>, 78 F.Supp.2d 1182, 1189 (D. Kan. 1999) ("Speculation or unsubstantiated fears of what may happen in the future cannot provide the basis for a preliminary injunction."). In addition, based upon the findings above with respect to plaintiff's Eighth Amendment claim concerning his desire to be examined by a specialist and have an MRI conducted, plaintiff has also not shown a likelihood of success on the merits. Therefore, plaintiff's request for injunctive relief should be denied.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the defendants' Motion to Dismiss Plaintiff's Complaint **(Docket No. 26) be granted in part and denied in part**. More specifically, it is recommended that the claims against defendants Hartley, DeCesaro, and John Doe be dismissed with prejudice for lack of personal participation and that plaintiff's Eighth Amendment claim concerning the failure to send him to a specialist and to have an MRI performed be dismissed with prejudice for failure to state a claim. In addition, it is recommended that the motion to dismiss be denied with respect to plaintiff's Eighth Amendment claim that his condition continued and worsened, but defendants Dr. Creany, Nurse Practitioner Klenke, and Nurse Practitioner Hibbs were deliberately indifferent by refusing to even see or examine him.

**RECOMMENDED** that the Plaintiff's Motion for Preliminary Injunction **(Docket**

**No. 4) be denied**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  March 29, 2010                              s/ Michael J. Watanabe
      Denver, Colorado                         Michael J. Watanabe
                                         United States Magistrate Judge